**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Francisco HERNANDEZ–ROJAS, Defendant-Appellant.**

**No. 79–1420.**

United States Court of Appeals, Ninth Circuit.

April 25, 1980.

---

Mark E. Griffin, Asst. Federal Public Defender, Portland, Or., on brief; David Teske, Federal Public Defender, Portland, Or., for defendant-appellant.

Peter Robinson, Portland, Or., on brief; William W. Youngman, Asst. U. S. Atty., Portland, Or., for plaintiff-appellee.

Before MERRILL, TANG, and SCHROEDER, Circuit Judges.

TANG, Circuit Judge:

After a jury trial, Francisco Hernandez-Rojas was convicted of violating 8 U.S.C. § 1326, illegal reentry into the United States after having been previously deported. On appeal, Hernandez raises a number of evidentiary objections. We find that none of these objections have merit and affirm the judgment of conviction.

## I.

The Government's Exhibit One included a warrant of deportation, which contained the dated notation "deported to Mexico, Calexico, California," and was signed by a United States Immigration Officer. The Government offered this exhibit to establish Hernandez's prior deportation, one of the material elements of a § 1326 violation. Hernandez contends the exhibit should have been excluded from evidence as inadmissible hearsay.

The Government argues that, although hearsay, the exhibit falls within the "public records" exception to the hearsay rule, Fed. R.Evid. 803(8)(B). Rule 803(8)(B) makes admissible records, reports, statements, or data compilations of public offices or agencies setting forth "matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel". Hernandez argues that Rule 803(8)(B) is inapplicable because the warrant of deportation was an observation made by a law enforcement officer in a criminal case, and therefore comes within the law enforcement exception to the rule.

Although some courts have inflexibly applied the exception to all law enforce-

ment records, *see United States v. Oates*, 560 F.2d 45, 83–84 (2d Cir. 1977), this court has looked to the purpose of the law enforcement exception in determining the admissibility of a public record. *See United States v. Orozco*, 590 F.2d 789 (9th Cir.), *cert. denied*, 439 U.S. 1049, 99 S.Ct. 2845, 61 L.Ed.2d 288 (1979). In *Orozco*, the issue was whether records of the license plates of vehicles crossing the border were admissible even though those records were kept by customs law enforcement personnel. The court held that the law enforcement exception to Rule 803(8)(B) did not apply. The court noted that the purpose of the exception was to exclude observations made by officials at the scene of the crime or apprehension, because observations made in an adversarial setting are less reliable than observations made by public officials in other situations. *Id.* at 793. Congress, however, did not intend to exclude records of routine, non-adversarial matters. *Id.*

Similarly, the purpose behind the law enforcement exception to Rule 803(8)(B) is inapplicable to the notation on the warrant of deportation in the Government's Exhibit One. The notation that Hernandez was deported to Mexico was a ministerial, objective observation, which has inherent reliability because of the Government's need to keep accurate records of the movement of aliens. It has none of the features of the subjective report made by a law enforcement official in an on-the-scene investigation, which investigative reports lack sufficient guarantees of trustworthiness because they are made in an adversary setting and likely to be used in litigation. *See id.; United States v. Stone*, 604 F.2d 922 (5th Cir. 1979) (Rule 803(8) is designed to allow admission of official records prepared for purposes independent of litigation). The recordation of a routine matter such as the fact and date of Hernandez's deportation is plainly not of the adversarial nature that might "cloud the perception" of the law enforcement official. *See Orozco*, 590 F.2d at 793.

## II.

Hernandez next contends that the district court erred in not permitting him to cross-examine a government witness about the failure of the INS to inform defendant of his right to speak with a Mexican consul. Hernandez argues that this cross-examination was necessary to challenge the trustworthiness of the Government's evidence that deportation had in fact occurred.

In order to convict a defendant for a violation of § 1326, the prior deportation must have been lawful. *See United States v. Gasca-Kraft*, 522 F.2d 149 (9th Cir. 1975). A violation of 8 C.F.R. 242.2(e), which requires that an arrested alien be advised of his right to speak with the consul of his country, is a ground for attacking the validity of the deportation if the violation prejudiced the defendant. *See United States v. Calderon-Medina*, 591 F.2d 529 (9th Cir. 1979). Prior to trial, the district court conducted a hearing as to whether the Government's admitted violation of § 242.-2(e) prejudiced Hernandez. The court found no prejudice, and Hernandez has not appealed that ruling.

Because the legality of Hernandez's underlying conviction was ruled not in issue at trial, it was proper to exclude evidence to prove the illegality of the deportation. Hernandez argues, however, that the questioning was necessary to disprove the fact of deportation. The district court did not abuse its discretion in excluding this evidence as irrelevant. Proof that the INS violated § 242.2(e) does not tend to make any less probable the objective fact whether Hernandez was deported. *See* Fed.R.Evid. 401. Even if relevant, the district court could have reasonably concluded that any probative value was outweighed by possible confusion to the jury.

For the same reason, Hernandez's contention that the district court erred in refusing to allow him to introduce rebuttal evidence concerning the legality of the prior deportation is without merit.

The judgment of the district court is affirmed.