**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

JERRY VALDIVIA, ALFRED YANCY, and HOSSIE WELCH, on their own behalf and on behalf of the class of all persons similarly situated,
*Plaintiffs-Appellees,*

v.

ARNOLD SCHWARZENEGGER, Governor of the State of California, and the STATE OF CALIFORNIA,
*Defendants-Appellants.*

No. 08-15889

D.C. No.
2:94-CV-00671-
LKK-GGH
Eastern District of California,
Sacramento

ORDER

Filed September 28, 2010

Before: John T. Noonan, Michael Daly Hawkins, and Milan D. Smith, Jr., Circuit Judges.

Order;
Dissent by Judge Bea

---

## ORDER

Judge Noonan recommended granting Appellants' Petition for Rehearing En Banc. Judge Hawkins recommended denying the Petition. Judge M. Smith voted to deny the Petition. The full court was advised of the Petition for Rehearing En Banc and a judge of the court requested a vote on whether to rehear the case en banc. The en banc call failed to receive a majority of votes by active judges in favor of en banc consideration. Fed. R. App. P. 35.

16539

The Petition for Rehearing En Banc is DENIED.

---

BEA, Circuit Judge, dissenting from the denial of rehearing en banc, joined by O'SCANNLAIN, TALLMAN, CALLAHAN, IKUTA, and N.R. SMITH, Circuit Judges:

The Supreme Court has told us the Constitution's due process requirements for a proper parole revocation hearing[1] are *less* than the requirements for a proper criminal trial. *Morrissey v. Brewer*, 408 U.S. 471, 488-89 (1972) (stating that the Supreme Court did not intend to "equate . . . parole revocation to a criminal prosecution in any sense"). This only makes sense. A parolee has already been convicted. His freedom is a matter of grace; it is a privilege extended in an attempt to rehabilitate him. A criminal defendant, however, is presumed innocent; his freedom is a matter of right. His conviction would deprive him of his liberty.

Today, the Ninth Circuit leaves in place a decision that affords *greater* due process protection as to evidence offered against parolees than as to evidence offered against criminal defendants. Under the majority decision of the panel, nontestimonial hearsay evidence, which would be admissible against a criminal defendant without any violation of the defendant's constitutional evidentiary rights, is *inadmissible* against a parolee in a parole revocation hearing unless the State can show "good cause" to deny the parolee his right to confrontation as stated in *United States v. Comito*, 177 F.3d 1166 (9th Cir. 1999).[2]

---

[1]"Parole, probation, and supervised release revocation hearings are constitutionally indistinguishable and are analyzed in the same manner." *United States v. Hall*, 419 F.3d 980, 985 n.4 (9th Cir. 2005).

[2]The balancing test set forth in *Comito*—our version of "good cause"—requires hearing officers to "weigh the [parolee's] interest in his constitutionally guaranteed right to confrontation against the Government's good cause for denying it" before admitting hearsay evidence at a parole revocation hearing. *Comito*, 177 F.3d at 1170.

An example may help. Sally calls 911 and exclaims, "My husband Bob just shot me!" At Bob's trial for attempted murder, the prosecutor calls the 911 dispatcher to testify as to what Sally said when she called 911. Sally's hearsay statement is admissible; it is nontestimonial, so the Confrontation Clause of the Sixth Amendment does not bar its admission. *See Davis v. Washington*, 547 U.S. 813, 827-28 (2006) (holding that statements made by a domestic abuse victim to a 911 operator are nontestimonial when made during an ongoing emergency). Further, Sally's hearsay statement is an excited utterance, so it is admissible under Federal Rule of Evidence 803(2).

But what if Bob were on parole when Sally called 911 and the State simply wanted to revoke his parole? According to the panel's majority decision, Sally's hearsay statement is not admissible unless the State can show what constitutes "good cause" in our circuit to deny Bob his right to confront Sally.

This result is odd in theory and still more odd in practice. I thus respectfully dissent from the denial of rehearing en banc.

## I

The Due Process Clauses of the Fifth and Fourteenth Amendments provide minimum procedures the States must provide during parole revocation proceedings. *Morrissey*, 408 U.S. at 487-89. These minimum procedures are meant to "assure that the finding of a parole violation will be based on verified facts." *Id.* at 484. One of the minimum requirements of due process in a parole revocation hearing is "the right [of the parolee] to confront and cross-examine adverse witnesses." *Id.* at 489.[3]

---

[3]The *Morrissey* Court went on to state that due process does not require confrontation if "the hearing officer specifically finds good cause." 408 U.S. at 489. Read in context, the requirement that the parolee must have

To determine "whether the admission of hearsay evidence violates [a parolee's] right to confrontation in a particular [parole revocation] case, the court must weigh the [parolee's] interest in his constitutionally guaranteed right to confrontation against the Government's good cause for denying it." *Comito*, 177 F.3d at 1170. The weight of the parolee's interest in his due process right to confrontation depends on two factors: (1) "the importance of the hearsay evidence to the court's ultimate finding," and (2) "the nature of the facts to be proven by the hearsay evidence." *Id.* at 1171. On the other side of the balancing test, to determine whether good cause exists, a court must look to "both the difficulty and expense of procuring witnesses and the traditional indicia of reliability borne by the evidence." *Hall*, 419 F.3d at 988 (internal quotation marks omitted).

Later, in *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court altered the way in which the right to confrontation is defined under the Sixth Amendment. The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend VI. The *Crawford* Court held that the admission of testimonial out-of-court statements against a criminal defendant violates the defendant's rights under the Confrontation Clause of the Sixth Amendment unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. 541 U.S. at 68. No *Comito* or other type of balancing test is applied.

However, the Confrontation Clause does not apply to the admission of nontestimonial hearsay. *United States v. Sine*,

an opportunity to confront witnesses unless the hearing officer finds good cause is applicable only if the parolee would otherwise be entitled to confront those witnesses. We must now read *Morrissey* in light of *Crawford v. Washington*, 541 U.S. 36 (2004), which redefined the scope of the confrontation right in the constitutional context.

493 F.3d 1021, 1035 n.11 (9th Cir. 2007) (citing *Whorton v. Bockting*, 549 U.S. 406, 420 (2007) (stating in dicta that, "[u]nder *Crawford*, . . . the Confrontation Clause has no application to [nontestimonial] statements and therefore permits their admission even if they lack indicia of reliability")). Most hearsay exceptions cover statements that are, by their nature, not testimonial. *Crawford*, 541 U.S. at 56.

Examples of nontestimonial hearsay include: statements made to a 911 dispatcher during an ongoing emergency, *Davis*, 547 U.S. at 828; public records, such as records of conviction, *United States v. Weiland*, 420 F.3d 1062, 1077 (9th Cir. 2005); immigration judges' memoranda of oral decision, *United States v. Ballesteros-Selinger*, 454 F.3d 973, 975 (9th Cir. 2006); warrants of deportation and birth certificates, *United States v. Bahena-Cardenas*, 411 F.3d 1067, 1075 (9th Cir. 2005); and applications for permanent resident status, *United States v. Marguet-Pillado*, 560 F.3d 1078, 1085 (9th Cir. 2009). Further, "[b]usiness and public records are generally admissible absent confrontation . . . because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." *Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527, 2539-40 (2009).

A criminal defendant's right to confrontation derives from the Confrontation Clause of the Sixth Amendment, but a state-convicted parolee's right to confrontation derives from the Due Process Clause of the Fourteenth Amendment. The due process right to confrontation under the Fourteenth Amendment provides less protection to parolees during parole revocation hearings than the Confrontation Clause of the Sixth Amendment provides to defendants during criminal trials. *See Morrissey*, 408 U.S. at 488-89.

That does not mean the term "confrontation" should be interpreted differently in the Sixth Amendment context than it is in the Fourteenth Amendment context. Rather, the differ-

ence between the right to confrontation guaranteed by the Sixth Amendment and the right to confrontation guaranteed by the Fourteenth Amendment is whether the right is absolute. The Confrontation Clause of the Sixth Amendment provides an absolute bar to the admission of testimonial out-of-court statements unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. *Crawford*, 541 U.S. at 68. The due process right to confrontation under the Fourteenth Amendment, on the other hand, is not absolute. It is subject to the hearing officer's discretion where there are specific good reasons for requiring confrontation. *Morrissey*, 408 U.S. at 489.

The purpose of the right to confrontation—whether under the Sixth or Fourteenth Amendment—"is to ensure reliability of evidence." *Crawford*, 541 U.S. at 61; *see Morrissey*, 408 U.S. at 484 (explaining that the goal of the due process right to confrontation is "to assure that the finding of a parole violation will be based on verified facts"). Further, the right to confrontation—whether under the Sixth or Fourteenth Amendment—"applies to 'witnesses' against the accused." *Crawford*, 541 U.S. at 51; *see Morrissey*, 408 U.S. at 489 (explaining that the due process right to confrontation applies to "adverse witnesses"). Because of the these similarities, "confrontation" should be interpreted to have the same meaning under the Fourteenth Amendment as it does under the Sixth Amendment.

Now criminal defendants have an argument that *Valdivia* requires us to extend *Comito* balancing to criminal trials—not as a right of confrontation, but as a due process right. That is, if the Due Process Clause of the Fourteenth Amendment guarantees to parolees the right to have a hearing officer conduct the *Comito* balancing test before he admits nontestimonial evidence, surely a criminal defendant, who has an even greater liberty interest, has a due process right to have a trial judge conduct the *Comito* balancing test before he admits the same evidence.

*Crawford*'s elucidation of the limits of the Confrontation Clause should apply with equal force to the due process right to confrontation under the Fourteenth Amendment. Where *Crawford* permits the admission of evidence in a criminal trial, the evidence should necessarily be admissible in a parole revocation hearing. The panel's holding otherwise allows a hearing officer to exclude from a parole revocation hearing, based on the State's failure to show good cause for failure to present the witness in court, the same evidence that would be admissible without a showing of good cause to prove guilt at a criminal trial. Where *Crawford* would bar the admission of evidence in a criminal trial the evidence would not be admissible in a parole revocation hearing unless the government could show specific good reasons for not requiring confrontation.[4] *Morrissey*, 408 U.S. at 484, 489. Because this interpretation of the right to confrontation provides no greater protection to parolees in parole revocation hearings than to defendants in criminal trials, it is consistent with *Morrissey*.

This result is also consistent with *Comito*. The *Comito* balancing test applies only where the admission of hearsay evidence would implicate a parolee's right to confrontation. *Comito*, 177 F.3d at 1170. Because not every hearsay statement is testimonial, not every such statement implicates a parolee's right to confrontation. Thus, a hearing officer should not apply the *Comito* balancing test to *all* out-of-court statements proffered by the government to prove the matter asserted during a parole revocation hearing, as the panel opinion would require. Rather, a hearing officer should apply the *Comito* balancing test only when the government proffers *testimonial* out-of-court statements. If the government proffers *nontestimonial* out-of-court statements, the right to confronta-

---

[4]Although the *Comito* balancing test would apply to all testimonial hearsay evidence, evidence that falls within "long-standing exceptions to the hearsay rule," and would be admissible in a criminal trial, "should satisfy the lesser standard of due process accorded [a parolee] in a revocation proceeding." *Hall*, 419 F.3d at 987.

tion is not implicated and the *Comito* balancing test is inapplicable.[5] Confrontation is required only as to testimonial evidence; it is not required as to nontestimonial evidence.

## II

The panel majority opinion also creates a direct conflict with the Second Circuit. The Second Circuit has developed a two-part test to analyze the admissibility of hearsay evidence in a parole revocation hearing. *United States v. Williams*, 443 F.3d 35, 45 (2d Cir. 2006). Where the government proffers hearsay that would be *inadmissible* under an "established exception to the hearsay rule," the district court must "determine whether good cause exists to deny the defendant the opportunity to confront the adverse witness." *Id.* To make that determination, the court must balance "the defendant's interest in confronting the declarant" against "the government's reasons for not producing the witness and the reliability of the proffered hearsay." *Id.* This balancing test is similar to the *Comito* balancing test. However, where the government proffers hearsay that would be *admissible* in a criminal proceeding under an "established exception to the hearsay rule," no such "good-cause analysis" is required. *Id.* The *Valdivia* majority opinion directly conflicts with this rule.

The Second Circuit's approach to the admission of hearsay statements in parole revocation hearings is more consistent with *Morrissey* than is the panel's majority approach, because the Second Circuit does not require hearing officers to apply a *Comito*-like balancing test to *all* hearsay evidence the government proffers in a parole revocation hearing. Thus, in most instances, the Second Circuit does not provide parolees with greater confrontation rights to bar proffered evidence than

---

[5]Of course, *Comito* did not draw a distinction between testimonial and nontestimonial hearsay. But that is attributable to the fact *Comito* was decided before *Crawford* redefined what confrontation means in the constitutional context.

criminal defendants have. Criminal defendants have no right to confrontation or to bar admission of evidence when the government proffers nontestimonial hearsay, admissible under a hearsay exception, during a criminal trial. Similarly, under the Second Circuit's approach, parolees have no right to confrontation or to bar admission of evidence where the government proffers evidence that falls within an "established exception" or "firmly rooted" exception to the hearsay rule. These two inquiries—whether a statement is testimonial and whether a statement falls within an established hearsay exception—often overlap, because most established hearsay exceptions cover statements that are nontestimonial in nature. *See Crawford*, 541 U.S. at 56.

However, in some instances, the Second Circuit's approach may provide parolees with greater confrontation rights than criminal defendants. For example, a statement that is nontestimonial and does not fall within a firmly rooted hearsay exception (e.g., the residual exception, Federal Rule of Evidence 807) would not raise any Confrontation Clause issues at a criminal trial, but the Second Circuit would still require the government to show good cause for not allowing confrontation with respect to the same statement in a parole revocation hearing. Therefore, even though the Second Circuit's approach is more consistent with *Morrissey* than the panel's approach, there are still situations in which the Second Circuit does create a barrier to the admission of hearsay statements in a parole revocation hearing that is higher than the constitutional barrier to the admission of the same statements in a criminal trial.

A second problem with the Second Circuit's approach is that it requires hearing officers to determine which state hearsay exceptions are "firmly rooted" or "established." Although courts were required to make such determinations before *Crawford*, the only question courts are now required to answer with respect to the Confrontation Clause of the Sixth

Amendment is whether the hearsay was testimonial. *See Crawford*, 541 U.S. at 60, 68-69.

Rather than breathe life into the practice of determining which state hearsay exceptions are "firmly rooted" or "established," *Crawford*'s test—whether the hearsay evidence is testimonial or not—should be used to determine whether a hearing officer in a parole revocation hearing must apply the *Comito* balancing test. Hearing officers can rely on post-*Crawford* cases to determine whether hearsay evidence is testimonial.

### III

The panel opinion conflicts with *Morrissey* by providing parolees with *greater* rights than the Constitution affords criminal defendants. Neither the Constitution nor common sense requires this result. For these reasons, I respectfully dissent from the order denying rehearing en banc.